UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JEANETTE L. BAILEY,

          Plaintiff,

v.                                        Civil No. 2:18cv392

VIRGINIA DEPARTMENT OF
ALCOHOLIC BEVERAGE CONTROL,

          Defendant.

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss filed by Defendant Virginia Department of Alcoholic Beverage Control ("ABC" or "Defendant"), pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 3. For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED**. The Court **PROVIDES** Plaintiff Jeanette L. Bailey ("Bailey" or "Plaintiff") with leave to amend the Complaint to cure all defects within fifteen (15) days after the entry of this Order.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

Bailey is a resident of Chesapeake, Virginia. Compl. ¶ 1, ECF No. 1. Defendant is an agency of the Commonwealth of Virginia. Id. ¶ 2. Defendant oversees the distribution of

---

[1] The facts recited here come from the Complaint and are assumed true only to decide the motion to dismiss. The facts stated here are not factual findings for any purpose other than consideration of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

alcohol in Virginia and operates a liquor store at 2301 Colley Avenue, Norfolk, Virginia 23517. Id. Bailey was employed by Defendant as a sales associate at that store location beginning on April 25, 2017. Id. ¶ 7.

During Plaintiff's employment, a co-worker named Robert ("Robert") touched Plaintiff in a sexually suggestive manner several times. Id. ¶ 9. In May 2017, Robert touched Plaintiff on her lower back and ran his fingers up Plaintiff's back. Id. ¶ 10. Plaintiff verbally objected. Id. In June 2017, Robert grabbed Plaintiff by her shoulders and rubbed against her. Id. ¶ 12. Plaintiff again verbally objected. Id.

Plaintiff complained after both incidents to Melissa Parker ("Parker"). Id. ¶¶ 10, 12. Parker was the store manager and had supervisory, hiring and firing power over Plaintiff. Id. ¶ 8. Parker disregarded Plaintiff's complaint regarding the May 2017 incident, stating "oh, that's just Bob." Id. ¶ 11. Parker told Plaintiff a few days after the June 2017 incident that she had spoken to Robert and that he would not touch her again. Id. ¶ 13.

Further, Plaintiff alleges that throughout her employment, managers and staff made inappropriate sexual comments, sexual innuendos, and showed off tattoos located in normally-clothed body areas. Id. ¶ 14. These actions made Plaintiff uncomfortable, and Plaintiff complained to Parker. Id. In

particular, Robert would comment on Plaintiff's appearance and stare at her. Id. In July 2017, Plaintiff spoke to ABC's human resources department and requested to be transferred to another store. Id. ¶ 15.

On July 15, 2017, Robert[2] came up behind Plaintiff, leaned over and around her, and dropped a pen on the register where Plaintiff was working. When Plaintiff complained that Robert was violating her personal space, he stated "I'm trying not to touch you." Id. ¶ 17.

On July 20, 2017, Plaintiff was scheduled to begin work at 9:30 a.m. to prepare the front of the store before the store's 10:00 a.m. opening time. Id. ¶ 18.

When Plaintiff arrived, she found feces spread on the carpets approaching the register as well as a bag filled with feces and tissue paper next to the register ("July 20 Incident"). Id. ¶ 20.

The only other employees present when Plaintiff arrived were Robert and an assistant manager. Id. ¶ 19. Robert's shift began at 9:15 a.m., and his duties were to handle the merchandise in the back or storage areas of the store. Id. Robert was also responsible for closing the store the night

---

[2] The Complaint refers to a "Mr. Parker." Id. ¶ 17 ("On or about July 15, 2017, Mr. Parker came up behind Plaintiff. . . ."). The Court presumes this was in error, confusing Parker (a woman) and Robert, and was intended to refer to Robert as indicated by the remainder of the paragraph.

before.  Id. ¶ 21.  The assistant manager had been scheduled to start work at 9:00 a.m.  Id. ¶ 19.  Plaintiff complained to the assistant manager about the feces.  Id. ¶ 22.

Later that day, Parker demanded that Plaintiff pay for a bottle of liquor that Plaintiff overcharged to a customer approximately one month prior.  Id. ¶ 23.  Parker made this demand even though the bottle was still in the store's inventory and the customer had been refunded for the overcharge.  Id. Plaintiff refused to pay for the bottle, expressed to Parker that she felt she was being harassed and retaliated against and resigned her employment that afternoon.  Id. ¶ 24.

On May 9, 2018, Plaintiff filed a one-count Complaint in the Circuit Court of the City of Norfolk.  Notice of Removal, ECF No. 1, ¶ 1.  The sole count of the Complaint alleges that ABC unlawfully retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").  Compl. ¶¶ 25-30.

On July 11, 2018, Defendant filed a demurrer in the state court proceeding.  Demurrer, Ex. B of Notice of Removal, ECF No. 1.  On July 20, 2018, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441 et seq.  Notice of Removal, ECF No. 1.

On July 27, 2018, Defendant filed its Motion to Dismiss. ECF No. 3.  In its accompanying memorandum, ABC argues, inter

alia, that Plaintiff has failed to allege facts to suggest that Defendant acted adversely against her for engaging in protected activity, or sufficient facts to demonstrate constructive discharge. Def.'s Mem., ECF No. 4 at 1. Plaintiff filed her Response on August 10, 2018. ECF No. 5. Defendant filed its Reply on August 16, 2018. ECF No. 6.

## II. STANDARD OF REVIEW

The well-established Rule 12(b)(6) standard of review permits dismissal when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not be detailed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted). Although the truth of the facts alleged is presumed, district

courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to ". . . give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . ." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true

(even if doubtful in fact). . . ." <u>Id.</u> at 555 (internal citations omitted).[3]

## III. DISCUSSION

Title VII prohibits an employer from taking improper retaliatory action against an employee attempting to assert his or her rights under Title VII. According to the statute,

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made

---

[3] In its response, ABC attaches five exhibits: (1) the EEOC charge ("Exhibit 1"); (2) a document titled "Employee Written Counseling Documentation" ("Exhibit 2"); (3) internal email correspondence ("Exhibit 3"); (4) a document titled "Personnel Action Notice" (Exhibit 4); and (5) additional emails about Bailey's transfer request ("Exhibit 5").

A motion to dismiss under Rule 12(b)(6) is generally limited to a review of the allegations in the complaint itself. <u>Goines v. Valley Cmty. Servs. Bd.</u>, 822 F.3d 159, 165-66 (4th Cir. 2016). However, courts may consider documents that are explicitly incorporated into the complaint by reference, <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007), and those attached to the complaint as exhibits, Fed. R. Civ. P. 10(c). Courts may also consider a document that was not expressly incorporated or attached to the complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity. <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004); <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999). A document is "'integral to the complaint'" "'where the complaint relies heavily upon its terms and effect[.]'" <u>Goines</u>, 822 F.3d at 159 (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)). Courts may look at whether the complaint quotes heavily from the document; limited quotation or reference to the documents are insufficient to incorporate those documents. <u>Goines</u>, 822 F.3d at 159 (citing <u>Sira v. Morton</u>, 380 F.3d 57, 67 (2d Cir. 2004)).

The parties agree that Exhibit 1, the EEOC charge, may be considered. Pl.'s Resp., ECF No. 5 at 5 n.3. Defendant argues that the Court may consider Exhibits 2-4 as they are a matter of public record, and Exhibits 2-5 are integral to the Complaint. Def.'s Reply, ECF No. 6 at 2-3 n.1.

ABC does not authenticate these documents (and Plaintiff disputes the authenticity of Exhibits 3-5, Pl.'s Resp., ECF No. 5 at 5) or explain how email communications among ABC employees, for instance, are a matter of public record. The Complaint does not quote from or even reference Exhibits 2-5. That the documents are about the same incidents as the Complaint is not sufficient to make them integral.

As such, the Court only considers Exhibit 1 for the purposes of this motion; but in any event, consideration of the exhibits would not affect the determination of the instant motion.

an unlawful employment practice by this title, or
because he has made a charge, testified, assisted, or
participated in any manner in an investigation,
proceeding, or hearing under this title.

42 U.S.C. § 2000e-3(a). In order to succeed in a retaliation
claim, an employee must show that "(1) she engaged in a
protected activity; (2) the employer acted adversely against
her; and (3) there was a causal connection between the protected
activity and the asserted adverse action." Ziskie v. Mineta,
547 F.3d 220, 229 (4th Cir. 2008) (citing Holland v. Washington
Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007)).

## A. Protected Activity

As an initial matter, the Court notes that the parties do
not contest whether Plaintiff engaged in protected activity.
See Def.'s Reply, ECF No. 6 at 3 ("ABC never contested the
'protected activity,' prong of the analysis[.]"). Such activity
can fall into two categories. As the Fourth Circuit has
explained, "protected activities fall into two distinct
categories: participation or opposition. An employer may not
retaliate against an employee for participating in an ongoing
investigation or proceeding under Title VII, nor may the
employer take adverse employment action against an employee for
opposing discriminatory practices in the workplace." Laughlin
v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir.
1998) (citing 42 U.S.C. § 2000e-3(a)). "Opposition activity

encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin, 149 F.3d at 259.

Where a plaintiff engages in opposition activity, a plaintiff must "prove that [s]he opposed an unlawful employment practice which [s]he reasonably believed had occurred or was occurring." Peters v. Sch. Bd. of City of Virginia Beach, No. 2:01CV120, 2007 WL 295618, at *5 (E.D. Va. Jan. 26, 2007). She must show (1) that she "subjectively (that is, in good faith) believed" that the defendant engaged in a discriminatory action and (2) "this belief was objectively reasonable in light of the facts." Id.

Plaintiff has engaged in a protected activity by opposing discrimination practices on the basis of gender in the workplace. Bailey alleges that she made multiple informal complaints to Parker regarding Robert's inappropriate contact, how Robert stared at her, and the general sexual comments made by staff. Compl., ECF No. 1 ¶¶ 10, 12, 14. She also complained to the assistant manager following the July 20 Incident. Id. ¶ 22. Further, Bailey alleges what she subjectively believed to be harassment or a hostile work environment. Id. ¶ 26. Courts have found it is objectively reasonable to believe that purported sexual harassment involving inappropriate touching on

multiple occasions is an unlawful employment practice. See, e.g., Ferrell v. Harris Ventures, Inc., 812 F. Supp. 2d 741, 746 (E.D. Va. 2011) (denying summary judgment as the plaintiff could reasonably believe that the sexual harassment by third party co-workers he heard about was an unlawful employment practice). Here, Bailey experienced the sexual harassment. Therefore, Bailey has alleged that she engaged in a protected activity.[4]

## B. Adverse Employment Action

The parties largely contest whether Bailey has adequately pled the second element: whether she has suffered an adverse employment action. An adverse employment action "is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted). Two years after the Fourth Circuit's James opinion, the Supreme Court shed more light on how one determines whether an act has adversely affected terms, conditions or benefits of a plaintiff's employment. The Supreme Court stated in Burlington Northern that an adverse employment

---

[4] Courts may draw "the inference of discrimination [in] sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity." English v. Pohanka of Chantilly, Inc., 190 F. Supp. 2d 833, 841 (E.D. Va. 2002). Although the Court concludes that Bailey opposed discrimination on the basis of gender, it cannot conclude that Bailey opposed discrimination on the basis of her Baptist religion. Nothing in the Complaint suggests the inappropriate contact, comments, or July 20 Incident was on the basis of religion. To the extent that Plaintiff's claims are based on engaging in protected activity opposing discrimination on the basis of religion, those claims are dismissed.

action must be the type that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Sante Fe Ry. v. White, 548 U.S. 53, 68 (2006) (internal quotations omitted). Whether an employer's action is likely to dissuade a worker is examined from an objective reasonable worker perspective. Burlington Northern, 548 U.S. at 68.

The Complaint alleges that Bailey suffered an adverse employment action as ABC engaged in "harassing and retaliating against [Bailey] due to her engagement in protected activity, or allowing such harassment and retaliation, and constructively discharging her because of her engagement in protected activity." Compl. ¶ 29.

The parties in their briefing identify four specific instances of harassment and retaliation, each of which could satisfy the adverse employment action element: 1) denial of Bailey's transfer request, 2) the demand by Parker for Plaintiff to pay for a bottle of liquor overcharged to a customer ("Demand for Payment"), 3) the July 20 Incident, and 4) constructive discharge. Each will be addressed in turn.

## 1. Denial of Bailey's Transfer Request

In its motion, ABC argues that the denial of Bailey's request to transfer to another store location cannot constitute a materially adverse employment action because a) regional

management did not have any knowledge of her complaints, b) the request was unrelated to the alleged harassment, c) Parker gave Plaintiff a positive recommendation in connection with the transfer request, and d) the denial of her transfer request did not result in any material change to her employment. Def's. Mem., ECF No. 4 at 6-7.

Plaintiff in response states that she does not allege that the denial of her transfer request constituted an adverse employment action. Pl.'s Resp., ECF No. 5 at 8. Accordingly, it is not necessary to consider whether Defendant's arguments have merit.

### 2. Demand for Payment

Bailey does allege that both the Demand for Payment and the July 20 Incident may each serve as an independent adverse employment action. Plaintiff states:

> [m]ost "reasonable workers," particularly in an indoor retail setting, would likely be dissuaded from engaging in protected activity when faced with feces smeared and bagged at their workstation (with the likely knowledge of a supervisor in the person of the assistant manager present in the unopened Store) along with baseless demands for payment from their supervisor.

Pl.'s Resp., ECF No. 5 at 10.

The Demand for Payment is not an adverse employment action. As explained, an adverse employment action must adversely affect the terms, conditions, or benefits of the plaintiff's

employment. A monetary penalty, payment or fine could be considered an adverse employment action if it reduces a plaintiff's compensation. See, e.g., Fordyce v. Prince George's Cty. Maryland, 43 F. Supp. 3d 537, 549 (D. Md. 2014) (holding that it was an adverse employment action where a penalty was automatically deducted from plaintiff's paycheck). Here, however, Parker only made a request for payment from Plaintiff; it is not alleged that Bailey did or was forced to pay the penalty or that there was any adverse action for failing to pay the penalty. Thus, there is no actual reduction in compensation.

The Demand for Payment is more akin then to a reprimand. As discussed at length in Hinton v. Virginia Union Univ., a reprimand also must either have a direct adverse employment effect or exacerbate future discipline in a way that plausibly can be expected to create a future adverse employment effect in order serve as the adverse employment action element of a Title VII discrimination claim. 185 F. Supp. 3d 807, 820-21 (E.D. Va. 2016).

Again, the Demand for Payment did not have an actual adverse effect; Bailey did not pay it and resigned shortly after the demand was made. The Complaint is also devoid of any allegation of future discipline that would have occurred if she

did not pay, for instance, that Bailey would have been forced to do so at the risk of losing her job.

Plaintiff argues that the Supreme Court's standard set forth in Burlington Northern does not require retaliatory actions to affect the terms and conditions of employment. Pl.'s Resp., ECF No. 5 at 10. However, as cases like Fordyce and Hinton (which post-date Burlington Northern) demonstrate, Burlington Northern does not replace the "adverse effect on terms and conditions" test with a "dissuade a reasonable worker" standard, but merely explicates further on the standard. Therefore, the request for payment does not constitute an adverse employment action.

### 3. July 20 Incident

Plaintiff's attempt to use the July 20 Incident as an adverse employment action also fails. Again, Plaintiff argues that "'[m]ost 'reasonable workers,' particularly in an indoor retail setting, would likely be dissuaded from engaging in protected activity when faced with feces smeared and bagged at their workstation (with the likely knowledge of a supervisor in the person of the assistant manager present in the unopened Store)[.]" Def.'s Resp., ECF No. 5 at 10.

For there to be a retaliatory adverse employment action, the employer must be the one that acts. The Complaint does not

contain any allegation (nor does Plaintiff appear to argue) that the assistant manager was directly responsible for the feces.

To the extent that Plaintiff alleges that ABC's failure to address the July 20 Incident (through the assistant manager) amounted to an adverse employment action, that argument also fails. Despite what Plaintiff states in her response, the Complaint is devoid of any allegation that the assistant manager knew of the feces prior to Plaintiff beginning her shift. The Complaint only alleges that when Plaintiff arrived at work at 9:30 a.m., she discovered the feces; the assistant manager began working at 9:00 a.m.; and that Robert began working at 9:15 a.m., and also closed the store the night before. Compl. ¶¶ 18-21. Whatever implications these allegations may suggest, they fail to survive <u>Iqbal</u> and <u>Twombly</u> scrutiny; mere implications are insufficient to impute knowledge to the assistant manager and in turn, establish a deliberate failure to act as a retaliatory adverse employment action by Defendant.

Further, the Complaint is devoid of any allegation that the assistant manager failed to act after Plaintiff's complaint about the feces. The Complaint only alleges that Bailey made such a complaint to the assistant manager, Compl. ¶ 22, but nothing about what happened thereafter. Therefore, the allegations about the July 20 Incident do not make out an adverse employment action.

## 4. Constructive Discharge

Constructive discharge may serve as the adverse employment action in a Title VII retaliation claim. Courts have referred to such claims as "retaliatory constructive discharge." See, e.g., Shetty v. Hampton Univ., No. 4:12CV158, 2014 WL 280448, at * 17 (E.D. Va. 2014).

To establish constructive discharge, a plaintiff must be able to show that her former employer "deliberately ma[de] [her] working conditions intolerable, and thereby force[d] [her] to quit." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985), cert. denied, 475 U.S. 1082 (1986). Therefore, a claim of constructive discharge has two elements; a plaintiff must prove the intolerability of working conditions and the deliberateness of the employer's action. Bristow, 770 F.2d at 1255.

### a. Intolerability

The "intolerability" of work conditions is evaluated in terms of whether a reasonable person would find them so and thus be forced to resign. Bristow, 770 F.2d at 1255. "Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." Paroline v. Unisys Corp., 879 F.2d 100, 114 (4th Cir. 1989). "[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or

16

difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004) (citing Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)). Defendant, without citing any relevant case, argues that no reasonable employee would have felt compelled to resign in Plaintiff's situation. Def.'s Reply, ECF No. 6 at 5.

Courts have found that a reasonable person could find it objectively intolerable where an employer causes an employee to have significant interaction with a co-worker who has allegedly sexually harassed her. See, e.g., Lopez v. BMA Corp., No. CIV.A. DKC 13-2406, 2013 WL 6844361, at *12 (D. Md. Dec. 24, 2013).

Plaintiff has alleged that Parker disregarded Plaintiff's first complaint regarding Robert in May 2017. After Plaintiff's second complaint in June 2017, Parker told Plaintiff that Robert would not touch her again. However, another incident occurred on July 15, 2017 where Robert leaned over her to drop a pen. To the extent Plaintiff has alleged that Parker's inaction or lack of sufficient action caused her to continue to work with Robert, Plaintiff has made allegations sufficient to fulfill the

intolerability element required to show constructive discharge amounting to an adverse employment action.[5]

## b. Deliberateness

More problematic and largely unaddressed by the parties, is Bailey's failure to allege deliberateness.

"Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the plaintiff to quit." <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 237 (4th Cir. 1999) (en banc), <u>cert. denied</u>, 528 U.S. 1189 (2000). The deliberateness of an employer's action may be proven by actual or circumstantial evidence. <u>Carter</u>, 33 F.3d at 459.

The Complaint alleges generally that "Defendant discriminated against Plaintiff with regard to the terms and conditions of her employment . . . due to her engagement in protected activities" and "Defendant's acts of malice, spite,

---

[5] As Plaintiff has at this stage of the case established intolerability of her work conditions based on the alleged sexual harassment alone, it is not necessary to consider Defendant's arguments that a reasonable person would not find the Demand for Payment and the July 20 Incident so intolerable that she would be forced to resign.

The Court notes, however, that Defendant's Exhibit 3 demonstrates the contradiction in ABC's argument. In those emails, Les Morris, ABC's Assistant Director of Retail Operations, expresses confusion over why the store is demanding payment from Bailey. The store suffered no monetary loss; the customer was overcharged or charged twice for the same bottle of liquor, he was later refunded, and the bottle remained in the store. Defendant argues that since the demand was converted to written counseling or a formal reprimand, it was not intolerable. However, the Demand for Payment was baseless. Defendant also presents no support for its farfetched argument that a reasonable person would not find having her workplace covered in feces intolerable.

and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: harassing and retaliating against her due to her engagement in protected activity, or allowing such harassment and retaliation, and constructively discharging her because of her engagement in protected activity." Compl. ¶¶ 26, 29.[6]

At best, the Complaint alleges in a conclusory manner that Defendant harassed Plaintiff or retaliated against her, or ignored such harassment and retaliation, because of the protected activity. That goes to the Title VII retaliation claim. Nothing in the Complaint indicates that Defendant took such actions against Plaintiff with the intention of forcing her to quit, as is required in order to make out the adverse employment action of retaliatory constructive discharge.

The Fourth Circuit has stated that intent may be inferred from circumstantial evidence. For instance, "[i]ntent may be shown by evidence that an employee's resignation was the reasonably foreseeable consequence of the employer's conduct" or that a response by employer that is "reasonably calculated to end the intolerable environment" was required. Amirmokri v.

---

[6] To the extent Plaintiff is alleging that Robert's actions led to her constructive discharge including any implication that Robert was responsible for the July 20 Incident, Robert was not Plaintiff's employer and "wielded no supervisory or managerial power over [Plaintiff]." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 (4th Cir. 2004). As such, his actions cannot serve as the basis for a constructive discharge claim.

Baltimore Gas and Electric Co., 60 F.3d 1126, 1132-1133 (4th Cir. 1995); Johnson v. K-Mart Corp., 131 F.3d 134 (4th Cir. 1997) (same). However, demonstrating deliberateness through circumstances can be a higher bar for plaintiffs to satisfy. See, e.g., Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 473 (4th Cir. 2002) (finding the circumstantial evidence was insufficient to establish deliberateness).

Here, the Complaint does not permit the Court to find that deliberateness, based on all the circumstances, has been alleged. For instance, it is not evident how the employee's resignation was the reasonably foreseeable consequence of a demand for payment here. In fact, it appears the employer expected Bailey to continue her employment and thus pay for the bottle.

The Court also cannot conclude that resignation was the reasonably foreseeable consequence of any failure to respond to the alleged continuing sexual harassment. After Plaintiff's June 2011 complaint, Parker spoke with Robert and told Plaintiff Robert would not touch Plaintiff again. Another incident occurred on July 15, which Plaintiff has not alleged she reported. Nor is resignation the reasonably foreseeable consequence of any failure to respond to the July 20 Incident given the timing; Plaintiff made a complaint on the day of the incident and resigned that afternoon. In neither instance, did

Plaintiff give Defendant the opportunity to correct the problem. For all these reasons, the Court concludes Plaintiff has failed to allege that the Defendant employer acted in a manner calculated to force Plaintiff to quit.

### C. Causation

"An employee need not prove causation itself at the prima facie case stage: rather, a close temporal relationship between the protected activity and the adverse action is sufficient to show a causal nexus." Brockman v. Snow, 217 F. App'x 201, 207 (4th Cir. 2007) (citing Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006)). "While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" Yashenko, 446 F.3d at 551 (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)).

The parties do not appear to dispute whether the Complaint satisfies this element. Here, Plaintiff engaged in protected activity when she complained to Parker that Robert inappropriately touched her in May and June 2017, and complained about the July 20 Incident that same date to the assistant manager. The purported adverse employment actions followed thereafter; the Demand for Payment, the July 20 Incident, and Bailey's resignation due to retaliatory constructive discharge

all took place on July 20. At most, there was a two-month period between the protected activity and purported adverse employment actions. Courts have found that such a close temporal connection would be sufficient to fulfill the causation element. <u>King v. Rumsfeld</u>, 328 F.3d 145, 151 (4th Cir. 2003) (finding that a two-and-a-half month gap between protected activity and adverse employment action was sufficient to establish causal connection); <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (per curiam) (noting that some cases "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case").

### D. Remaining Arguments

ABC spends a significant portion of its briefs discussing possible Title VII discrimination and hostile work environment claims. However, Plaintiff has indicated that the Complaint only includes a single count—Title VII retaliation. As such, it is not necessary to consider the arguments to dismiss any implied Title VII discrimination and hostile work environment claims.

## 1. Relationship of Retaliation Claim to Title VII and Hostile Work Environment Claims

To the extent that Defendant is arguing that Plaintiff does not have a Title VII discrimination claim or a hostile work environment claim and thus did not engage in protected activity, that argument has no merit. As already discussed, a plaintiff does not need to demonstrate that there was an actual act of discrimination to have engaged in protected activity supporting a retaliation claim. Plaintiff merely needs to demonstrate that she subjectively believed, and that it was objectively reasonable for her to believe, that she was opposing a discriminatory act. Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003).

Similarly, Plaintiff does not need to demonstrate that there was an actual hostile work environment to have engaged in protected activity supporting a retaliation claim for opposing such an alleged hostile work environment. She merely needs to demonstrate that she subjectively and reasonably believed that a hostile work environment existed. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 284 (4th Cir. 2015). Like the hostile work environment standard itself, courts look to the pervasiveness and severity of the alleged discrimination to determine whether it is objectively reasonable to believe that she is opposing a hostile work environment. Breeden, 532 U.S.

at 270-71. "A single offensive utterance . . . generally will not create a hostile environment without significant repetition or an escalation in the harassment's severity. . . . But an isolated incident that is physically threatening or humiliating will be closer—even if not equal—to the type of conduct actionable on its own because it is 'extremely serious.'" Boyer-Liberto, 786 F.3d at 284 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). "'The more severe the harassment, the less pervasive it needs to be, and vice versa.'" Boyer-Liberto, 786 F.3d at 284 (quoting Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 579 (D.C. Cir. 2013)).

Here, it is alleged that there are two instances of physical sexual harassment in May and June 2017, another instance of harassment without physical contact on July 15, the July 20 Incident, the Demand for Payment, and sexual comments on a regular basis. The severity of some of these incidents (e.g. the inappropriate physical contact) and the pervasiveness (all occurring within a span of three months) is sufficient to meet the reasonably objective requirement at the pleading stage. See, e.g., Stewart v. MTR Gaming Grp., Inc., 581 F. App'x 245, 247 (4th Cir. 2014) (hostile work environment claim involving inappropriate sexual comments and three incidents of touching).

## 2. Pleading Standard

Defendant further contends that a constructive discharge claim requires a plaintiff to "set out a plausible showing that (1) she was subjected to a hostile work environment 'sufficiently severe or pervasive to alter the conditions of [her] employment, and (2) [she] must show the abusive working environment became so intolerable that her resignation qualified as a fitting response.'" Def.'s Reply, ECF No. 6 at 4 (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 133-134 (2004)). In essence, ABC argues that Plaintiff has failed to plead the "something more" than hostile work environment necessary to state a plausible constructive discharge claim.

It is true that "[t]he law is well-settled that a claim of constructive discharge requires proof of working conditions that are even harsher than those required to state a claim of hostile work environment." Tinsley v. Astrue, No. 3:10-cv-01184, 2012 WL 5377881, at *8 (S.D.W.Va. Aug. 15, 2012) (collecting cases), report and recommendation adopted, 2012 WL 5381678 (S.D.W.Va. Oct. 31, 2012). As already discussed, Plaintiff has adequately plead the intolerability required for constructive discharge (and thus, has also met the requisite standard for a hostile work environment). That Plaintiff did not separately plead hostile work environment as an independent cause of action is of no moment.

### E. Leave to Amend

"The Fourth Circuit has held that '[i]f the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.'" Berkeley-Dorchester Cntys. Econ. Dev. Corp. v. U.S. Dep't of Health & Human Servs., 395 F. Supp. 2d 317, 325 (D.S.C. 2005) (quoting Pittston Co. v. United States, 199 F.3d 694, 705 (4th Cir. 1999)). Here, the Court finds that facts alleged by Plaintiff may be a proper subject of relief. Therefore, the Court grants Plaintiff leave to amend her Complaint. See Edwards v. Murphy-Brown, L.L.C., 760 F. Supp. 2d 607, 633 (E.D. Va. 2011) (granting sua sponte leave to amend complaint).

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED**, ECF No. 3. The Court **PROVIDES** Plaintiff with leave to amend the Complaint to cure all defects within fifteen (15) days after the entry of this Order.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January  7  , 2019